*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LYDELL DAWAN DUKES,

        Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 359708
Lapeer Circuit Court
LC No. 19-013630-FC

Before: SWARTZLE, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Defendant fled the police after he shot and killed a man, while also shooting and injuring another. A jury convicted defendant of open murder, assault with intent to commit murder, felon-in-possession of a firearm, third-degree fleeing and eluding, resisting and obstructing an officer, and five counts of possession of a firearm during the commission of a felony. We affirm.

## I. BACKGROUND

During the early hours of September 8, 2019, several residents informed the police that they had heard gunshots near their houses, and when the police arrived they found one victim who had died from a gunshot wound, one victim who had been injured by a gunshot wound, and defendant who was unconscious in the driver's seat of a car. Defendant regained consciousness and drove his vehicle away from the police. The police were able to detain defendant after deploying spikes to stop his vehicle, and the police transported defendant to the hospital for his various injuries. A video of this chase was played for the jury.

The police questioned the wounded victim, and he told the police that he could not remember who he had been with on that night, but the only three people who were in defendant's car were him, defendant, and the now-deceased victim.

The police retrieved the bullet from the wounded victim, as well as the bullet casings that surrounded the dead victim. Both the bullet and the casings matched the gun that defendant had in his lap. The police also seized the vehicle that defendant was driving, and it was documented that there were a series of bullet holes in the front quarter panel of the vehicle as well as in the

-1-

engine compartment. Rods were run through the bullet holes in the vehicle to demonstrate the bullet trajectory. After documenting the vehicle, as well as the evidence in the vehicle, the police turned the vehicle over to the insurance company that covered it; defendant argued that the vehicle was then totaled out.

Defendant was bound over after a preliminary examination, and before his trial defendant moved to dismiss the charges on the basis that returning the vehicle to the insurance company was a *Brady*[1] violation because potentially exculpatory evidence had been destroyed. Defendant also asserted that he was diabetic, and he was not given a glucose test when he was taken to the hospital. Thus, it could not be ruled out that he was in "insulin shock" on the night of the shootings. The trial court denied defendant's motion; the trial court explained to defendant how to retain an expert endocrinologist for trial to testify regarding his medical condition.

Defendant's original counsel withdrew from the case before the trial commenced because of case management. During the hearing regarding his counsel's withdrawal, defendant provided multiple complaints about his counsel's representation and stated that the counsel's withdrawal would be beneficial to him. Defendant was then assigned another court-appointed counsel who represented him at trial.

Defendant did not testify at trial. Instead, during closing argument, defense counsel argued that defendant was running away from the two victims after they were all involved in a "drug deal gone bad." Counsel further argued that defendant did not shoot the victims, but instead grabbed the gun to protect himself because one of the victims did have a gun. Counsel suggested that, because defendant had taken "a lot of drugs" around that time, he was unable to form the requisite intent to commit the crimes charged, even though he admitted that he drove away from the police.

In response, the prosecutor made the following remarks during his rebuttal argument:

> One of the instructions that he said is that you cannot take what a lawyer says as evidence. Their comments are not evidence, their questions are not evidence. And there's another very important instruction that the Court is going to give you and that is the defendant made a conscious choice not to testify and you can't draw any inference from that. But what you cannot do is then substitute the lawyer's comments as the defendant's testimony, and that is exactly what happened here. He's running away? Where did you hear that evidence? He had no ability to form intent? Who told us that? This is a drug deal gone wrong? Well, there's only one person that would know that. He was defending himself? … It is demonstrated at the crime scene it is demonstrated by his actions in the car, it is demonstrated by the witnesses who have testified, but what is not proven and is not evidence is what the defendant did this afternoon in court. He did not testify, his lawyer did that for him and that is not evidence. That is an argument. We would ask you to rely on the evidence in this case.

---

[1] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

The jury convicted defendant as previously described, and defendant now appeals those convictions.

## II. ANALYSIS

### A. POTENTIAL EXCULPATORY EVIDENCE

First, defendant argues on appeal that he was denied due process and a fair trial because potentially exculpatory evidence was destroyed when the vehicle he was driving was given to the insurance company, as well as not having his blood drawn to check his glucose levels at the hospital. This Court reviews de novo a defendant's constitutional due-process claim. *People v Dixon-Bey*, 340 Mich App 292, 296; 985 NW2d 904 (2022). Any underlying factual findings are reviewed for clear error. *Id.*

"To warrant reversal on a claimed due-process violation involving the failure to preserve evidence, a defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017) (quotation omitted). Evidence that is only "potentially useful" does not amount to a due-process violation without evidence of bad faith on the part of law enforcement. *Id.* (citation omitted). The burden of showing that evidence was exculpatory or that the police acted in bad faith is on the defendant. *Id.* "A prosecutor is not required to seek and find exculpatory evidence or assist in building the defendant's case, and a prosecutor is not required to negate every theory consistent with defendant's innocence." *Id.* (cleaned up).

Defendant argues that the trial court erred when it denied his motion to dismiss the charges on the basis of a *Brady* violation because he was unable to obtain a forensic expert to examine the vehicle before it was released and an independent expert could have examined the bullet hole trajectory; the position of the shooter; any other blood located in the vehicle; the cause of the broken windshield; and, any damage to the vehicle, including any mechanical problems. He also argues that the police did not test his hands on the night of the shooting for gunpowder residue. Further, if a glucose test had been performed at the hospital, then it would have determined whether defendant had been in insulin shock.

Defendant ignores, however, that failure to preserve only "potentially exculpatory" evidence does not establish a due-process violation unless he also establishes bad faith. First, defendant fails to set forth what evidence he could have gleaned from the vehicle that would have been exculpatory. Neither the prosecution nor the police are required to "seek and find exculpatory evidence" or assist in building or supporting a defendant's case, nor are they required to "negate every theory consistent with defendant's innocence." *People v Bosca*, 310 Mich App 1, 30; 871 NW2d 307 (2015). Second, defendant has not established (or even argued) that law enforcement or the prosecutor acted in bad faith. Accordingly, the trial court did not err when it denied defendant's motion to dismiss the charges.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant asserts several arguments that he was denied the effective assistance of counsel. Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the

effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). To preserve the issue of effective assistance of counsel for appellate review, a defendant must move for an evidentiary hearing in the trial court. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Because defendant did not move for a new trial or request an evidentiary hearing in the trial court, this issue is unpreserved and review is limited to the record. *Id.*

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667.

Defendant argues that his original counsel's withdrawal from the case prejudiced him because his subsequent trial counsel did not have sufficient time to prepare for trial. Defendant ignores that when his original counsel moved to withdraw, defendant took the position that the withdrawal would actually be beneficial for him. A defendant will not be allowed to assign error on appeal to something he deemed proper at trial. *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). To do so would allow a defendant to harbor error as an appellate parachute. *Id.*

Defendant also argues that his counsels were ineffective for failing to pursue an interlocutory appeal regarding the trial court's denial of defendant's motion to dismiss the charges. As stated above, the trial court did not err when it denied defendant's motion to dismiss the charges because defendant did not demonstrate a *Brady* violation. Because counsel cannot be ineffective for failing to make a futile objection, defendant has failed to show how his counsels' performance fell below an objective standard of reasonableness for not pursuing an interlocutory appeal. See *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014); *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Next, defendant argues that his trial counsel was ineffective for failing to present evidence of his diabetic medical condition. There is no evidence, however, to support that defendant was suffering from a diabetic episode or that his trial counsel did not investigate the possibility that defendant's alleged diabetic episode resulted in defendant involuntarily committing murder and assault with the intent to murder.

Further, as our Supreme Court has held, a defendant is not entitled to offer evidence of a lack of mental capacity to avoid or reduce criminal responsibility by negating specific intent. *People v Carpenter*, 464 Mich 223, 235-236, 241; 627 NW2d 276 (2001). If defendant intended

-4-

to offer his alleged diabetic episode as an issue of physical capacity, then he would have had to admit that he committed the act, but defend that the action was involuntary. *People v Likine*, 492 Mich 367, 393; 823 NW2d 50 (2012). Thus, if trial counsel had pursued this defense at trial, then defendant would have had to admit that he shot the victims. Defendant argued to the contrary that he was running away from the victims, in self-defense, and that he did not shoot the victims, and this was a matter of trial strategy. This Court "will not substitute its judgment for that of counsel on matters of trial strategy nor will this Court use the benefit of hindsight when assessing counsel's competence," *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (cleaned up), to find that defense counsel chose the wrong strategy. Defendant has not shown that defense counsel erred in failing to pursue a defense based on a diabetic episode or that there was a reasonable probability that the result of the trial would have been different.

Defendant next argues that his trial counsel was ineffective for admitting, during closing arguments, that he was in possession of a gun as well as that he fled police in the vehicle. "To gain assistance, defendant need not surrender control entirely to counsel." *McCoy v Louisiana*, 138 S Ct 1500, 1508; 200 L Ed 821; 86 USLW 4271 (2018). "For the Sixth Amendment, in granting the accused personally the right to make his defense, speaks of the assistance of counsel, and an assistant, however expert, is still an assistant." *Id*. (cleaned up). As the Court held in *McCoy*, to assert innocence is a decision reserved for the client, not their counsel. *Id*. "These are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objective in fact are." *Id*. (cleaned up). "Preserving for the defendant the ability to decide whether to maintain his innocence should not displace counsel's, or the court's, respective trial management roles." *Id*. at 1509 (cleaned up).

In this case a video of the car chase was played for the jury, and several of the officers identified defendant as the driver of the vehicle. Similarly, there was clear evidence that defendant had been found in possession of a firearm and that he had prior felony convictions. Unlike the defendant in *McCoy*, defendant in this case has not demonstrated that he communicated to the trial court, and to his counsel, that his trial strategy was to deny any involvement in the lesser charged offenses. *Id*. at 1512 ("Once [the defendant] communicated that to court and counsel, strenuously objecting to [his counsel's] proposed strategy, a concession of guilt should have been off the table."). Defendant did not move in the trial court to announce that he objected to his counsel's strategy, he did not move to replace his counsel, and he did not move for an evidentiary hearing or a *Ginther*[2] hearing to demonstrate that his counsel had admitted defendant's guilt to the lesser charges against defendant's own strategy. In summary, there is nothing in the record to support that defense counsel did not consult with defendant on the strategy or that defense counsel went against defendant's wishes.

Thus, defendant has not established that defense counsel's strategy of admitting to charges that were clearly supported by evidence while arguing that there was no evidence to support the murder and assault with intent to murder charges was unreasonable under prevailing professional norms. *People v Matuszak*, 263 Mich App 42, 60; 687 NW2d 342 (2004). As such, defendant also failed to establish that there was a reasonable probability that the outcome would have been

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

different if trial counsel had not decided upon this strategy. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Id*. at 61. Defendant has failed to establish that he was denied effective assistance of counsel as to this claim.

Defendant also argues that his counsel was ineffective for failing to investigate whether a female shooter was present at the scene of the shooting, and whether that female shooter would have exonerated him. "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 138 (2012) (cleaned up). "A sound defense strategy cannot follow an incomplete investigation of the case when the decision to forgo further investigation was not supported by reasonable professional judgment." *Id*. at 55. Decisions regarding what evidence to present and whether to call witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

There is no reference in the record to a female shooter, and there is no evidence that defense counsel did not investigate if other people were with defendant on the night of the shooting. At trial, the wounded victim testified that he could not identify the shooter, and he told the police on the night of the shooting that the only people with him in the car were defendant and the deceased victim. Without any reference to a female shooter, and no other information to indicate that trial counsel did not fully investigate the information given to him, the record does not support defendant's claim that his trial counsel was ineffective in failing to investigate a female shooter.

## C. DEFENDANT'S RIGHT AGAINST SELF-INCRIMINATION

Next, defendant argues that the prosecutor improperly commented on defendant's right not to testify at trial. Defendant failed to object to the prosecutor's comments at trial, and, therefore, this issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). This Court reviews unpreserved claims of prosecutorial misconduct for plain error which affected defendant's substantial rights. *Thomas*, 260 Mich App at 453-454.

Defendant also argues that his trial counsel was ineffective for failing to raise an objection to the prosecutor's comments. As stated, defendant did not move for an evidentiary hearing, and this issue is also unpreserved. *Sabin*, 242 Mich App at 658.

"A defendant in a criminal case has the constitutional right against compelled self-incrimination and may elect to rely on the presumption of innocence." *People v Fields*, 450 Mich 94, 108; 538 NW2d 356 (1995), citing U S Const, Am V; Const 1963, art 1, § 15. "A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich 446, 463-464; 793 NW2d 712 (2010). A prosecutor is entitled, however, to respond to issues raised by the defendant. *People v Jones*, 468 Mich 345, 352-353 n 6; 662 NW2d 375 (2003). Therefore, unless the prosecutor's comments burden the defendant's right not to testify, or shift the burden of proof on an element of the offense to the defendant, the comments are not improper. *Fields*, 450 Mich at 112-113.

In this case, the prosecutor's rebuttal comments, taken in context with defense counsel's closing argument, did not burden defendant's right not to testify or shift the burden of proof onto

defendant. Rather, the prosecutor's comments were a fair response to the issues raised by defense counsel. Defense counsel raised an alternate theory—i.e., defendant ran away in self-defense and did not shoot the victims—which, if accepted, would have exonerated defendant. Therefore, the prosecutor's comments regarding the validity of a theory of self-defense did not shift the burden of proving innocence to defendant. *Id*. at 115. The prosecutor also addressed defense counsel's remarks that defendant had been unable to form the requisite intent for the crimes. The prosecutor merely pointed out that there was no evidence produced at trial regarding defendant's mental state or inability to form the requisite intent. The prosecutor also properly reminded the jury that counsel's comments were not evidence and that the evidence the jury was allowed to consider had been admitted during trial.

Because the prosecutor's rebuttal comments were proper, any objection would have been futile. As stated, counsel is not ineffective for failing to make a futile objection. See *Woolfolk*, 304 Mich App at 457; *Thomas*, 260 Mich App at 457. And, in any event, the trial court instructed the jury that the lawyers' arguments were not evidence, and it is presumed that the jury followed the trial court's instructions. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). Defendant has not overcome that presumption here.

## D. BINDOVER

Lastly, defendant argues that there was insufficient evidence to bind him over for trial. To preserve the issue whether a district court erred in binding a defendant over, the defendant must file a motion to quash before the circuit court. *People v Noble*, 238 Mich App 647, 658; 608 NW2d 123 (1999). Defendant did not file a motion to quash in this case. Therefore, this issue is unpreserved. Review of unpreserved issues is limited to plain error affecting defendant's substantial rights. *Id*.

"In order to bind a defendant over for trial in the circuit court, the district court must find probable cause that the defendant committed a felony based on there being evidence of each element of the crime charged or evidence from which the elements may be inferred." *People v Simon*, 339 Mich App 568, 580; 984 NW2d 800 (2021) (cleaned up). "A defendant may not appeal whether the evidence at the preliminary examination was sufficient to warrant a bind over if the defendant was fairly convicted of the crimes at trial." *Green*, 313 Mich App at 530. As discussed, none of the issues presented on appeal require reversal or a remand to the trial court. Thus, defendant may not appeal whether the evidence at the preliminary examination was sufficient. *Id*.

## III. CONCLUSION

Defendant has not demonstrated that his constitutional rights were infringed or that his counsel was ineffective. We conclude that his convictions stand.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Anica Letica